**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELLE WARREN by her Next Friend | ) | |
| DARLENE WARREN and DARLENE | ) | |
| WARREN, as Next Friend and Special | ) | |
| Administrator of JEANNETTA MCDOWELL, | ) | |
| deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 09-cv-3512 |
| | ) | |
| SHERIFF OF COOK COUNTY THOMAS | ) | Judge Robert M. Dow, Jr. |
| DART, in his official and individual capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss [34] Plaintiffs' first amended complaint [32],[1] which alleges federal and state law claims relating to the death in custody of Jeannetta McDowell ("decedent" or "McDowell").[2] Also before the Court is Plaintiffs' motion to strike [65] non-nurse Defendants' and nurse Defendants' reply briefs to the motion to dismiss [61, 63]. For the reasons stated below, Defendants' motion to dismiss [34] is granted in part and denied in part, and Plaintiffs' motion to strike [65] is denied.

---

[1] Plaintiff has since filed a second amended complaint [60], which is not materially different from the first amended complaint [32].

[2] The Rule 12(b)(6) motion to dismiss was filed by Defendants Sheriff Dart and Cook County. [34]. The remaining 31 Defendants later moved to adopt the motion without raising new arguments [38, 45, 50], which motions were granted. [43, 47, 53].

## I.    Background[3]

On June 6, 2008, McDowell, a 25-year-old mother of two, was arrested for allegedly shoplifting diapers from a local store.  She was charged with retail theft, and the Cook County Sheriff's Office held her as a pretrial detainee at Cook County Jail.

During McDowell's initial intake at the jail, one or more Defendants took items that were in McDowell's possession, including two asthma inhalers that McDowell had been carrying inside her purse.  Defendants became aware during McDowell's initial intake that McDowell had a history of cardiac thrombosis and suffered from asthma, for which she needed medication. Defendants did not return McDowell's asthma inhalers to her after her intake, nor did they issue McDowell a replacement inhaler.  For the next several days, McDowell complained repeatedly of shortness of breath, lightheadedness, and chest pains.  She vomited several times and was visibly in need of urgent medical attention.  On June 9, 2008, McDowell died in her jail cell from bronchial asthma.  She did not have her inhalers or a jail-issued inhaler at the time of her death. About six weeks later, McDowell's fiancé (the father of infant Plaintiff Gabrielle Warren) committed suicide in connection with his grief following McDowell's death.

On March 2, 2010, Plaintiff Darlene Warren filed a first amended complaint [32], as next friend and special administrator of McDowell and as next friend of McDowell's infant daughter, Gabrielle Warren.  The complaint names one municipal Defendant:  Cook County.  The complaint also names 32 individual Defendants:  Sheriff of Cook County Thomas Dart ("Dart" or "the Sheriff") and 18 other supervisory correctional officers;[4]  four correctional officers;[5]  and

---

[3]  For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint.  See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[4]   In addition to Dart, the complaint names as supervisory Defendants the following individuals: Assistant Director Kurtovich, Assistant Director Brown, Chief Diane Hargraves, Captain Donna Davis,

nine nurses employed by Cook County through the Cermak Health Services of Cook County (the "nurse Defendants").[6] Defendant Dart is sued in his individual and official capacities; all other individual defendants have been sued in their individual capacities only.

In the seven-count complaint, Plaintiffs assert a claim under 42 U.S.C. § 1983 against all Defendants, alleging that while McDowell was a pre-trial detainee at Cook County Jail, Defendants caused her death by denying her adequate medical care in violation of the Fourteenth Amendment (Count I). Plaintiffs also assert wrongful death (Count II), survival action (Count III), intentional infliction of emotional distress (Count IV), and negligence (Count V) state law tort claims arising out of the alleged denial of adequate medical care against all Defendants. Finally, Plaintiffs assert claims under the theory of *respondeat superior* (Count VI) against Sheriff Dart and Cook County and for indemnification (Count VII) against Cook County. The Court has federal question subject-matter jurisdiction over the § 1983 claims (28 U.S.C. §§ 1331, 1343(a)(3)) and supplemental jurisdiction over the state law claims (28 U.S.C. § 1367(a)).

Defendants moved to dismiss [34] Counts I-V of Plaintiffs' first amended complaint [32] as to all named individual Defendants and Count VI of the complaint as to Defendant Cook County. Defendants do not move to dismiss Count VI as it pertains to Sheriff Dart, nor does they move to dismiss Count VII of the complaint.

---

Captain Katie Harrison, Captain Martha Anderson, Sergeant Milton, Sergeant Garcia, Sergeant Skinner, Sergeant Atsaves, Sergeant Edwards, Sergeant Stockdale, Lieutenant Lee, Lieutenant McNamara, Lieutenant Blunt, and Lieutenant Pierce.

[5] The four named correctional officer Defendants are: Correctional Officers Felton, Davis, Doyle, and Brewer.

[6] The nine named nurse Defendants are: Nurses Barnes, Pearson, Mohammed, Hunter, Vaughn, McDonald, Sampson, Smith, and Morris.

## II.     Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14).  In other words, the pleading must allege facts that plausibly suggest the claim asserted.  *Twombly*, 550 U.S. at 570.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."  *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (omission in original).

The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.     Plaintiffs' Section 1983 Claims**

Plaintiffs allege that Defendants violated McDowell's Fourteenth Amendment rights by denying McDowell access to adequate medical care, a form of cruel and unusual punishment.[7] The complaint invokes 42 U.S.C. § 1983, which creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The statute is not "itself a source of substantive rights, but merely provides a means for vindicating federal rights elsewhere conferred," *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)), such as in the Eighth and Fourteenth Amendments.

Under § 1983, there are two ways in which a party may sue an individual government actor:  in the actor's official capacity or in his individual, or personal, capacity.  See *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).  Here, Plaintiffs have asserted § 1983 claims against both types of defendants.  Plaintiffs have sued all individual Defendants in their individual capacities, and have sued Defendant Dart in both his individual and official capacities.[8]

In support of their claim of unconstitutional denial of adequate medical care pursuant to § 1983, Plaintiffs allege that Defendants, acting in their individual and/or official capacities, were

---

[7] The Eighth Amendment shields prisoners from cruel and unusual punishment, including inadequate medical care.  See *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  A pre-trial detainee enjoys the same protection under to the due process clause of the Fourteenth Amendment.  See *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); see also *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 301 n.2 (7th Cir. 2010) (holding that "pretrial detainees are entitled, through the Fourteenth Amendment's due process clause, to the same basic protection [as prisoners]").

[8]  Plaintiffs also name Cook County as an institutional Defendant.  Defendants have moved to dismiss Count VI (*respondeat superior*) as to Cook County, but have not independently moved to dismiss the indemnification claim (Count VII) against Cook County.  However, Defendants have stated that should Counts I-VI be dismissed, Count VII also would need to be dismissed.

"deliberately indifferent" to the consequences of their alleged conduct. See *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002). Defendants seek dismissal of Plaintiffs' § 1983 claims as to all individual capacity and official capacity § 1983 claims on the ground that the complaint pleads only legal conclusions as to deliberate indifference without sufficient facts to support the conclusions, and thus does not satisfy the pleading requirements of Rule 8(a) under *Twombly* and *Iqbal*. See *Twombly*, 550 U.S. at 555, 563; *Iqbal*, 129 S. Ct. at 1949. The Court addresses the adequacy of the pleading with respect to the individual capacity claims and official capacity claims separately.

### A. Individual Capacity Claims

Plaintiffs' complaint alleges § 1983 individual capacity claims against Sheriff Dart and 16 other supervisory officers as well as against four correctional officers and nine nurses at the jail. Defendants move to dismiss these claims under Rule 12(b)(6), arguing that Plaintiffs' complaint does not meet Rule 8(a) pleading requirements because it states merely "legal conclusions" and fails to allege plausibly that the individual Defendants knowingly engaged in misconduct.

To establish a § 1983 claim for the denial of medical care in violation of the Fourteenth Amendment, a plaintiff must make two showings: first, that the medical need was objectively serious; and second, that the defendants acted knowingly or with deliberate, reckless indifference to the risk posed by the serious medical need. See *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010). With respect to the first inquiry, an objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or * * * is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

The second inquiry has two components: the defendant must have had subjective knowledge of the risk to the detainee's health, and the defendant must have disregarded that risk. *Id.*

### 1.      Motion to strike

As a preliminary matter, the Court addresses Plaintiffs' motion to strike [65] portions of Defendants' reply briefs [61, 63].[9]  In their reply briefs [61, 63], Defendants submit that the individual capacity claims fail to allege "substantive personal involvement" by any of the Defendants.  Plaintiffs moved to strike the portions of the reply briefs tendering the "personal involvement" argument on the ground that Defendants failed to raise it in their motion [34] and the issue is therefore waived.

The Seventh Circuit has ruled that failure to raise an argument in the first instance constitutes waiver of that argument.  *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007).  An argument so waived may not later be raised in a reply brief.  *Id.*  The purpose of the waiver rule is to avoid unfairness to a non-movant who is denied the opportunity to respond to an issue because the movant raised the issue for the first time only in a reply brief. See *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).

Section 1983 individual capacity claims require a plaintiff to make a showing of personal involvement by a defendant government actor. See *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  A plaintiff that successfully pleads the essential elements of the individual capacity claim – namely, that a defendant had *knowledge* of and *consciously disregarded* a serious risk – also succeeds in alleging the personal involvement of the individual defendant by virtue of the fact that those elements are subjective in nature.  See *id.* (holding that "an official satisfies the personal responsibility requirement of section 1983 * * * if the conduct causing the

---

[9]  Sheriff Dart and employees of the Sheriff's office filed one reply brief [61], and the nurse Defendants filed a separate reply brief [63].

constitutional deprivation occurs at his direction or with his knowledge and consent" (internal quotation marks and brackets omitted) (omission in original)); see also *Thomas*, 604 F.3d at 301 (noting that to have committed the tort, an "official must have subjective knowledge of the risk to the inmate's health and also must disregard that risk"). By the same token, a defendant who moves to dismiss a § 1983 individual capacity claim on the ground that the plaintiff failed to allege that the individual defendant knew of and disregarded a serious risk has asserted that the defendant lacked "personal involvement" in the alleged acts.

In their motion to dismiss [34], Defendants asserted that Plaintiffs' complaint failed to adequately plead the individual Defendants' "knowledge" of and "indifference" to McDowell's serious medical need. Defendants stated that "[n]either of these elements [of Defendants' knowledge or deliberate indifference] is contained in the pleading." [34, at 5.] Defendants further stated that there was an "absence of any *knowledge by the named Defendants* of McDowell's need for medical inhalers." *Id.* (emphasis added).

Because Defendants argue in their motion [34] that Plaintiffs' complaint [32] failed to adequately plead the subjective components of the § 1983 individual capacity claims, Defendants raised the issue of "personal involvement" in their motion [34], and thus were not engaged in improper sandbagging by raising the argument in their reply briefs as well [61, 63]. Plaintiffs had and took the opportunity to address the issue of personal involvement in their response [54] to Defendants' motion [34]. The Court therefore denies Plaintiffs' motion to strike [65] those portions of Defendants' reply briefs [61, 63] that raise the "personal involvement" issue.

### 2.    Motion to Dismiss the Individual Capacity Claims

Plaintiffs allege § 1983 individual capacity claims against 32 individual Defendants. Plaintiffs' complaint names each of these individuals, and specifies their titles and roles at the jail. The complaint categorizes the individual Defendants in three groups – supervisory officers,

correctional officers, and nurses – and identifies by name which Defendant belongs to what group.[10][11] Plaintiffs allege that the named supervisory officials, correctional officers, and nurses were employed by Cook County at the time of McDowell's death and personally contributed to her death. Defendants argue that Plaintiffs' § 1983 individual capacity claims should be dismissed because the complaint fails to set forth sufficient facts to plausibly support the legal conclusion that the individual Defendants knew of and consciously disregarded McDowell's serious medical needs or the systemic conditions that put her at risk in light of those needs. The Court denies Defendants' motion as to the individual capacity claims because it finds that Plaintiffs allege sufficient facts to plausibly suggest that (1) McDowell had serious medical needs and (2) the Defendants, in their individual capacities, were deliberately indifferent to the risk posed by those needs. See *Thomas*, 604 F.3d at 301.

Plaintiffs allege sufficient facts to support an inference that McDowell's medical needs were serious. McDowell had been diagnosed with asthma prior to her detention and received treatment for it, as shown by the allegation that she had two inhalers in her possession when she was taken to Cook County Jail. McDowell's condition was a serious one that required medical attention, given that her asthma caused her to suffer shortness of breath and ultimately caused her death while in jail. See *Cooper v. Office of Sheriff of Will County*, 333 F. Supp. 2d 728, 736 (N.D. Ill. 2004) (finding that decedent detainee's extant asthma condition was sufficiently serious to be constitutionally actionable).

---

[10]  See *supra*, n.4-6.

[11]  Plaintiffs initially were hampered in their ability to identify individual Defendants by the very fact that McDowell is deceased. The Court accordingly granted Plaintiffs expedited discovery for the purpose of identifying officers and employees with information relevant to the circumstances of McDowell's death. [25]  Plaintiffs subsequently filed a first amended complaint [32] identifying by name and role 32 individual Defendants allegedly involved in McDowell's death.

Plaintiffs also allege sufficient facts to show that Sheriff Dart was deliberately indifferent to the systemic conditions that in part caused McDowell's serious medical needs to go unattended.[12]  Specifically, Plaintiffs allege that Sheriff Dart:  (1) fostered an atmosphere at the Cook County Jail where correctional and medical personnel were encouraged to disregard the serious medical needs of detainees; (2) failed to provide medical services at night; (3) failed to have a system in place so that medical requests of detainees were reviewed promptly by properly trained medical staff and acted upon in a reasonable manner; (4) understaffed correctional officers at Cook County Jail in violation of accepted practices and court orders, despite knowing that such understaffing greatly increased the chances that detainees' serious medical needs went untreated; and (5) encouraged the destruction of documents and false writing of reports to cover up inadequacies in the medical care of detainees.

A jail official may be named as a defendant in his or her individual capacity in a § 1983 claim when the official personally participated in *or* had personal knowledge of the types of acts or omissions that form the basis of the claim.  See *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996).  A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail.  *Id.* at 1428-29 (holding that because sheriff and director of jail could have been expected to have personal responsibility for alleged systemic violations, claims regarding those violations could not be dismissed on the ground that deliberate indifference of defendants was not adequately pleaded); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (holding that "defendants such as the

---

[12]   Paragraph 34 of the complaint [32] identifies the "official Defendant" as one of the Defendants responsible for systemic conditions of confinement that allegedly caused McDowell's death.  The "official Defendant" identified is presumably Sheriff Dart, the only individual capacity Defendant who is also sued under § 1983 in his official capacity (see *infra*, Section III.B).

Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions").

As in *Antonelli* and *Sanders*, the Sheriff here was responsible for overseeing the general conditions of confinement at the jail. See *Antonelli*, 81 F.3d at 1428-29; *Sanders*, 198 F.3d at 629. As such, he can be expected have been aware of or to have participated in creating the deleterious systemic conditions that Plaintiffs allege existed in the jail. See *Antonelli*, 81 F.3d at 1428-29; *Sanders*, 198 F.3d at 629. Given that the systemic conditions complained of form part of the basis of Plaintiffs' individual capacity claim against Sheriff Dart, Plaintiffs have sufficiently shown that Sheriff Dart had subjective knowledge of the risk to detainees' health needs and disregarded that risk. See *Antonelli*, 81 F.3d at 1428-29; see also *Thomas*, 604 F.3d at 401. The Court therefore denies Defendants' motion to dismiss Plaintiffs' § 1983 individual capacity claim as to Sheriff Dart.

With respect to the remaining individual Defendants, Plaintiffs allege sufficient facts to support an inference of deliberate indifference to McDowell's serious medical needs. Plaintiffs allege that Defendants became aware of McDowell's diagnosis of asthma and history of cardiac thrombosis during her initial intake and nonetheless removed her asthma inhalers from her. Plaintiffs identify the supervisory officials, correctional officers, and nurses as becoming aware of McDowell's needs as they developed during her three days in detention for two reasons. First, Plaintiffs allege that McDowell made repeated complaints of shortness of breath and chest pains. Second, Plaintiffs allege that McDowell's deteriorating condition was obvious to anyone who saw her. Despite her complaints and visibly worsening condition, Plaintiffs allege, the named supervisory officials, correctional officers, and nurse Defendants did not provide McDowell with

access to the medical treatment that she needed for her asthma. McDowell died from asthma three days later.

Assuming the truth of all well-pleaded facts, the Court finds that Plaintiffs' allegations are more than merely speculative. *Twombly*, 550 U.S. at 569 n.14. Although it is true that Plaintiffs' complaint does not explicitly parse which of the named Defendants were responsible for which of the above acts or omissions, that level of specificity is not required under federal notice pleading standards. See *Erickson*, 551 U.S. at 93 (2007) (holding that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Id.* (internal quotation marks omitted) (omission in original); see also *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that a "prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted – if it names the persons responsible for the problem"). The complaint names the persons allegedly responsible for McDowell's death. *Burks*, 555 F.3d at 594. Furthermore, the complaint plausibly supports an inference that these persons had subjective knowledge of the risk to McDowell's health based on her complaints and visible condition, and that they disregarded that risk. See *Twombly*, 550 U.S. at 570; see also *Burks*, 555 F.3d at 594; *Thomas*, 604 F.3d at 301.

Of course, once Plaintiffs conduct full discovery, they will need to marshal detailed facts about each individual Defendant's personal role in the circumstances leading to McDowell's death in order to survive summary judgment. At this early stage in the litigation, however, dismissal would be premature. Plaintiffs' complaint has provided notice to Defendants, and "[i]f [the Defendants] later disclaim[] knowledge and responsibility for the alleged misconduct, * * *

[they] can readily identify those who were responsible." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). The Court therefore denies Defendants' motion to dismiss the § 1983 individual capacity claims as to the supervisory officers, correctional officers, and nurses.

### B.    Plaintiffs' *Monell* Claim Against Cook County and Defendant Dart

A plaintiff may invoke § 1983 to state a claim against a local government for a constitutional deprivation "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 (1978). Thus, a local government may be liable under § 1983 for an unofficial policy or practice that is sufficiently widespread to have become a "custom or usage with the force of law." *Id.* at 691 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Although there is no *respondeat superior* liability under § 1983, a plaintiff also may invoke the statute to sue a local government official in that person's official capacity when the local government's 'policy or custom' played a part in the violation of federal law. See *id.* at 663, n.7. When a plaintiff states an official capacity claim, the action is deemed to be, in essence, a suit against the local government itself. *Graham,* 473 U.S. at 165-66 (holding that "an official capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity," which must pay any related damages (internal citations omitted)). Plaintiffs' suit against Sheriff Dart in his official capacity is thus akin to a suit against Cook County.[13] *Id.*

To establish a § 1983 claim for municipal or official capacity liability, a plaintiff must show that (1) a deprivation of a federal right (2) resulted from a local custom or policy, which (3)

---

[13] Despite the fact that an official capacity claim against the Sheriff is akin to a suit against Cook County, it is not redundant to join the parties as Defendants. A county is a necessary party under Federal Rule of Civil Procedure 19(a)(1) in any suit seeking damages from an independently elected county officer, such as a sheriff. See *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

proximately caused the injury suffered. *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For the reasons stated above, Plaintiffs have pleaded sufficient facts to plausibly claim that McDowell was deprived of her Fourteenth Amendment right to adequate medical care, and that the deprivation caused her death. The first and third prongs of the official capacity claim are thus satisfied for purposes of surviving Defendants' motion to dismiss.

With respect to the second prong, a plaintiff must show that the deprivation was caused by the enforcement of an express policy, by a widespread practice that is so permanent and well-settled that it constitutes a custom or practice, or by a person with final policymaking authority. *Thomas*, 604 F.3d at 303 (citing *Monell*, 436 U.S. at 690). A defendant's failure to make a policy is also actionable in situations where rules or regulations are required to remedy a potentially dangerous practice. See *Sims v. Mulcahy,* 902 F.2d 524, 543 (7th Cir. 1990) (quoting *Jones v. City of Chicago,* 787 F.2d 200, 204-05 (7th Cir. 1986)). Although there is no "clear consensus" about the frequency with which harmful conduct must occur to qualify as a widespread practice or policy, see *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)), a "pattern of conduct or a series of acts violative of constitutional rights" may give rise to an inference that a municipal policy is the cause of the violations, see *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir. 1981).

Here, Plaintiffs contend that the denial of adequate medical care to McDowell was an unconstitutional deprivation caused by Cook County's widespread customs, policies, and practices that were promulgated, enforced, and disseminated by Defendant Dart. Specifically, Plaintiffs allege that Cook County and Sheriff Dart "failed utterly to provide the most basic health care commensurate with a civilized society, in this case and in many other cases" by:

failing to provide nighttime medical services; failing to have an adequate plan for emergency medical needs, including a plan to move detainees up stairways; failing to have a reasonably equipped or staffed emergency medical response team; failing to have a system in place so that medical requests of detainees would be reviewed promptly by medical staff; failing to staff a sufficient number of correctional officers at Cook County Jail, in violation of accepted practices and court orders, despite knowing that such understaffing greatly increases the chances that detainees' serious medical needs go untreated; failing to correct serious safety problems such as broken video monitoring systems, despite knowing that such problems greatly increase the chances that detainees' serious medical needs go untreated; and failing to provide adequate assessments of incoming detainees' health situations by qualified physicians. See [32, at ¶¶ 34-35].

Plaintiffs further contend that Defendants knew about the inadequacies of its alleged practices and consciously disregarded the risks the practices posed. In support of this contention, Plaintiffs allege that Defendants encouraged the destruction of documents and false writing of reports to cover up inadequacies in the medical care of detainees, thus maintaining an "atmosphere and climate" where inmates' serious medical needs were ignored and constitutional violations were not prosecuted or punished. See [32, at ¶ 35.]

Plaintiffs submit that the systemic customs and policies directly and proximately caused McDowell to be denied medical care and led to her death, and that, pursuant to *Monell*, both Cook County and Sheriff Dart are liable. In their motion to dismiss, Defendants assert that Plaintiffs' *Monell* claim should be dismissed because the alleged systemic failures do not adequately support an inference of deliberate indifference. Defendants do not, however, raise any argument contesting the existence of widespread policies and practices at the jail or

(assuming their existence, *arguendo*) disputing the link between those policies and practices and the treatment that McDowell received or failed to receive.

The Court finds that Plaintiffs' allegations support their legal conclusions as to the *Monell* claim against Cook County and Sheriff Dart. The complaint alleges numerous, widespread failings in Cook County Jail systems for providing access to medical treatment that plausibly suggest a "pattern of conduct or * * * series of acts violative of constitutional rights [that] will in many cases raise an inference of municipal policy." See *Powe,* 664 F.2d at 650. Furthermore, the complaint alleges facts that describe a direct link between (1) jail policies of inadequately providing medical treatment or failing to institute mechanisms for obtaining treatment, and (2) McDowell's inability to obtain treatment for her medical condition during her three days in detention on the other hand. Accepting all factual statements in the complaint as true for purposes of this motion, the Court "draw[s] the reasonable inference" that the alleged deleterious policies of Cook County Jail resulted in the denial of McDowell's access to adequate medical care in violation of the Fourteenth Amendment. See *Twombly*, 550 U.S. at 556. The Court therefore denies Defendants' motion to dismiss the *Monell* claim against Cook County and Sheriff Dart in his official capacity.

## IV. Plaintiffs' State Law Claims

In addition to the federal § 1983 claim, Plaintiffs allege various Illinois state claims, including wrongful death (Count II), survival action (Count III), intentional infliction of emotional distress (Count IV), negligence (Count V), and liability under the theory of *respondeat superior* (Count VI). Defendants present three theories as to why the Court should dismiss the state law claims. First, Defendants move to dismiss Counts II-V on the ground that Plaintiffs have failed to submit the requisite certificate of merit pursuant to 735 ILCS § 5/2-622, the

Illinois Healing Art Malpractice Act. Second, Defendants move to dismiss Counts II-V under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS §§ 10/6-105, 10/6-106(a), and 10/4-105. Finally, Defendants move to dismiss the *respondeat superior* claim against Cook County on the ground that Sheriff Dart is an independently elected officer who is not subject to the direction of the County. The Court addresses each argument in turn.

### A.     The Malpractice Act

Defendants claim that Counts II-V must be dismissed because they violate the Illinois Healing Art Malpractice Act ("Malpractice Act"). See 735 ILCS § 5/2-622. The Malpractice Act requires that a plaintiff filing a complaint that seeks damages "by reason of medical, hospital, or other healing art malpractice" attach a certificate of merit from a qualified, licensed physician who has reviewed the case and affirmed that "there is a reasonable and meritorious cause for the filing." 735 ILCS § 5/2-622. The purpose of requiring a certificate of merit is to minimize frivolous malpractice suits at the pleading stage. See *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000); *Threlkeld v. White Castle Syst., Inc.*, 127 F. Supp. 2d 986, 991 (N.D. Ill. 2001). Although Counts II-V of Plaintiffs' complaint do not contain any specific allegations of medical malpractice, Defendants contend that they are in essence healing art malpractice claims. And, because Plaintiffs did not file a certificate of merit pursuant to the Malpractice Act, Defendants argue that those counts must be dismissed for violation of the Act.

Preliminarily, the Court notes that there is some uncertainty as to whether § 5/2-622 of the Malpractice Act applies to state claims filed in federal court. Compare *Sherrod*, 223 F.3d at 614 (remanding to district court to permit plaintiff to amend her complaint to comply with the certification of merit requirement) with *Threlkeld*, 127 F. Supp. 2d at 991 (N.D. Ill. 2001)

(finding that certification requirement is a state procedural rule and does not apply in a federal case). Even if the Seventh Circuit's decision in *Sherrod* were not binding precedent, the Court would find persuasive the rationale for applying § 5/2-622 under the *Erie* doctrine. See *Erie R.R v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that a federal court hearing a state law claim must apply the state law rule when that rule is substantive rather than procedural, regardless of the jurisdictional basis for the case). The Seventh Circuit has ruled that "a rule limited to a particular area of law and motivated by concerns about the potential impact on primary behavior (here, [*e.g.,*] medical treatment) of making it too easy for plaintiffs to win a particular case" is "almost certainly" substantive law. *Murrey v. United* States, 73 F.3d 1448, 1456 (7th Cir. 1996). Section 5/2-622 is limited to cases alleging healing art malpractice, and was motivated by a desire to limit frivolous lawsuits within that area of law. See *Sherrod*, 223 F.3d at 613 (citing *Cammon v. W. Suburban Hosp. Med. Ctr.*, 704 N.E.2d 731, 738-39 (1998)); *Mueller v. N. Suburban Clinic, Ltd.*, 701 N.E.2d 246, 250 (1998). The certification of merit rule is thus a substantive one, and is applicable in the instant case. See also *Chapman v. Chandra*, 2007 WL 1655799, at *3-4 (S.D. Ill. Jun. 5, 2007) (reviewing Illinois federal court decisions as to whether § 5/2-622 is substantive or procedural, concluding that a majority have determined that the provision is substantive, and applying it to the malpractice claim at issue).

Illinois courts define malpractice as "'[p]rofessional misconduct or unreasonable lack of skill * * * [or f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them." *Cohen v. Smith*, 648 N.E.2d 329, 329 (Ill. App. 2d Dist. 1998) (quoting BLACK'S LAW DICTIONARY 959 (6th ed. 1990)). A complaint that

does not state a malpractice claim on its face may nonetheless come within the ambit of the Malpractice Act if it sounds in malpractice. See *Bommersbach v. Ruiz*, 461 F. Supp. 2d 743, 748-49 (S.D. Ill. 2006). A court may consider three factors in determining whether a complaint sounds in malpractice for purposes of the certification of merit requirement: (1) whether the applicable standard of care involved procedures not within the grasp of the ordinary lay juror; (2) whether the activity alleged was inherently one involving medical judgment; and (3) the type of evidence necessary to establish plaintiffs' claim. See *Bommersbach*, 461 F. Supp. 2d at 749 (citing *Jackson v. Chicago Classic Janitorial and Cleaning Service, Inc.*, 823 N.E.2d 1055, 1058 (Ill. App. 1st Dist. 2005)); see also *Lyon v. Hasbro Indus., Inc.*, 509 N.E.2d 702, 705 (Ill. App. 4th Dist. 1987) (holding that the certification requirement applies if the determination at issue in the claim "is inherently one of medical judgment"); *Woodard v. Krans*, 600 N.E.2d 477, 488 (Ill. App. 2d Dist. 1992) (holding that "[w]here determining the standard of care requires applying *distinctively medical knowledge or principles*, however basic, the plaintiff must comply with section 2-622" (emphasis added)).

The Court first considers whether the certification requirement applies with respect to the non-nurse Defendants. Illinois law requires that jailers "exercise ordinary and reasonable care for the preservation of [prisoners'] health and life under the circumstances of the particular case." *Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996) (citing *Dezort v. Village of Hinsdale*, 342 N.E.2d 468, 473 (Ill. App. 2d Dist. 1976)). Thus, with respect to the non-nurse Defendants, the standard of care is one of ordinary care, not medical expertise. Determining that such a failure amounted to a breach of the ordinary duty of care would not be beyond the ken of an ordinary lay juror. See *Woodard*, 600 N.E.2d at 488 (holding that "where the standard of care involves procedures not within the grasp of the ordinary lay juror, the case is one for malpractice,

rather than simple negligence). Plaintiffs allege that McDowell's condition was such that "anyone observing her would have realized that she needed urgent medical attention for what was a life threatening condition." [32, at ¶ 22.] Despite the obviousness of her needs, Plaintiffs allege, the non-nurse Defendants "[f]ailed to bring the decedent's condition to the attention of medical personnel so that [s]he could be properly diagnosed and treated." [32, at ¶ 41.] A failure to provide access to care to someone who was obviously ill does not inherently involve a question of medical judgment, does not turn on even basic medical standards or medical knowledge, and does not require the introduction of technical or expert medical evidence. See *Lyon,* 509 N.E.2d at 705; *Woodard*, 600 N.E.2d at 488. As such, Plaintiffs allegations with respect to the non-nurse Defendants do not thwart the intent of the statute – namely, providing expert guidance on a medical standard of care, thereby discouraging frivolous malpractice suits. The Court therefore determines that, in regard to the non-nurse Defendants, Plaintiffs state law claims do not sound in medical malpractice, and Plaintiffs were not required to file a certification of merit for Counts II-V as they pertain to these Defendants.

The same rationale does not apply with respect to the nine nurse Defendants named in Counts II-V. The nurse Defendants would be held to a standard of care that applies distinctively medical knowledge or principles. See *Woodard*, 600 N.E.2d at 488. Their acts or omissions with respect to McDowell – *i.e.,* their activity concerning whether and/or how to treat McDowell – necessarily involve medical judgment in light of McDowell's medical needs and the nurses' professional roles at the jail. Furthermore, Plaintiffs would need to introduce evidence of a technical medical nature in order to support their state law claims against the nurse Defendants. As such, Plaintiffs were required to file a certificate of merit from a qualified physician with respect to Counts II-V against the nine nurse Defendants. Because Plaintiffs failed to supply the

certificate of merit with respect to these Defendants, the Court dismisses the state law claims against them without prejudice. See *McCastle v. Mitchell B. Sheinkop, M.D., Ltd.*, 520 N.E.2d 293, 296 (Ill. 1988) (ruling that failure to comply with the § 5/2-622 does not require dismissal with prejudice).

### B.     The Illinois Tort Immunity Act

The Defendants next urge the Court to dismiss Counts II-V on the ground that §§ 10/6-105, 10/6-106(a), and 10/4-105 of the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act") shield them from liability for injuries inflicted by their alleged failure to examine McDowell, to diagnose her condition, or to treat her illness.

Defendants first contend that § 10/6-105 of the Tort Immunity Act shields them from liability for Plaintiffs' state law claims. Section 10/6-105 provides that:

> Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the *failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition* that would constitute a hazard to the health or safety of himself and others.

745 ILCS 10/6-105. Defendants argue that Counts II-V are based on a failure to make an adequate physical examination to determine whether McDowell suffered from a hazardous health condition. Defendants misconstrue Plaintiffs' complaint. Plaintiffs allege that McDowell had been diagnosed with asthma and a history of cardiac thrombosis prior to her arrest and detention. Plaintiffs further allege that, after her arrest, McDowell underwent an initial intake process at Cook County Jail (which may or may not have included a physical and mental examination) and that Defendants became aware of her medical condition during the intake process. Plaintiffs allege that Defendants denied McDowell access to treatment despite Defendants' awareness of McDowell's medical condition. Thus, Plaintiffs do not allege a failure

to examine McDowell for purposes of determining her medical condition, but a failure to provide her with access to treatment for that pre-determined condition of which Defendants allegedly were aware. Section 10/6-105 thus does not apply to the state law claims against the remaining individual Defendants.

Defendants next contend that they are immune from liability under § 10/6-106(a), which provides that:

> Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from *diagnosing or failing to diagnose* that a person is afflicted with mental or physical illness or addiction or from *failing to prescribe* for mental or physical illness or addiction.

745 ICLS 10/6-106(a) (emphasis added). Such immunity is limited, however, by subsection (d) of the statute, which provides that:

> Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any *treatment* prescribed for mental or physical illness or addiction * * *.

745 ILCS 10/6-106(d) (emphasis added). Defendants argue that they are immune from liability pursuant to § 10/6-106(a). Yet, Plaintiffs have not alleged in any of their state law claims that the individual Defendants failed to diagnose the condition that led to McDowell's death. Indeed, the complaint is clear that McDowell had been diagnosed with asthma and a history of cardiac thrombosis prior to her detention. Plaintiffs allege that, despite Defendants' awareness of McDowell's pre-determined diagnosis, Defendants removed McDowell's inhalers from her, failed to replace the inhalers, and failed to otherwise respond to her repeated complaints and requests for medical attention. The complaint thus asserts a failure to treat, not a failure to diagnose. As such, under § 10/6/106(d), Defendants are not immune from liability. See *Cooper v. Office of Sheriff of Will County*, 333 F. Supp. 2d 728, 731, 733 (N.D. Ill. 2004) (holding that neither §§ 10/6-105 nor 10/6-106 required dismissal of wrongful death and survival action

claims where plaintiff alleged that decedent was correctly diagnosed as having asthma but failed to receive timely medical care while detained).

Finally, Defendants allege that they are not precluded from immunity under the Tort Immunity Act because their actions with respect to McDowell's treatment were not willful and wanton. Section 4-105 of the Tort Immunity Act provides that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.

745 ILCS § 10/4-105. Given that the Court has determined that Defendants are not immune from liability under §§ 10/6-105 and 10/6-106(a), the question of whether Defendants *would* be exempt from immunity under § 10/4-105 were they to otherwise come within the purview of the Tort Immunity Act is irrelevant. Nevertheless, the Court notes that the "deliberate indifference" standard under § 1983 is essentially the same as the "willful and wanton" standard under the Tort Immunity Act. See *Bragado v. City of Zion Police Dep't*, 788 F. Supp. 366 (N.D. Ill. 1992). For the same reasons that Plaintiffs plausibly alleged that Defendants showed deliberate indifference to McDowell's serious medical needs, they have plausibly alleged that Defendants' acts and omissions with respect to McDowell's medical needs were willful and wanton. Defendants therefore would not be precluded from enjoying immunity under § 10/4-105 even if, *arguendo*, they were entitled to immunity under §§ 10/6-105 and 10/6-106(a). Defendants' motion to dismiss Counts II-V on the ground of immunity is denied.

### C.      Respondeat Superior

Count VI of the Plaintiff's complaint alleges that Cook County is liable for McDowell's death under the theory of *respondeat superior*.   Defendants move to dismiss Count VI. Defendants argue that the County may not be held liable for the acts and omissions of the Sheriff and his deputies.  See *Moy v. County of Cook*, 614 N.E.2d 265, 266-68 (Ill. App. 1st Dist. 1993) (holding that Cook County was not liable for negligent conduct of Cook County Sheriff under *respondeat superior* because there was neither an employment nor an agency relationship between County and Sheriff).

Plaintiffs respond that the County is a necessary party as it is required to pay judgments entered against the Sheriff in his official capacity.  See *Carver v. Sheriff of La Salle* County, 787 N.E.2d 127, 129 (Ill. 2003) (holding that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity").  This argument is correct as to Plaintiffs' claim of indemnification against Cook County (Count VII).  But Defendants have not moved to dismiss the indemnification claim.[14]   And, in any event, liability for indemnification purposes does not establish liability under the theory of *respondeat superior*.  With respect to the *respondeat superior* claim against Defendant Cook County, the law is clear that the County is not liable for actions of the Sheriff. *Moy*, 614 N.E.2d at 268.  The Court therefore grants Defendants' motion to dismiss Count VI as to Defendant Cook County.

---

[14]   Defendants do not independently seek to dismiss Cook County as Defendant for indemnification purposes (Count VII).  Defendants have, however, stated that, should Counts I-VI be dismissed, Count VII also would need to be dismissed.  Insofar as Counts I-VI survive or survive in part, Count VIII therefore survives as well.

**V.      Conclusion**

For the foregoing reasons, Plaintiffs' motion to strike [65] Defendants' reply briefs [61, 63] is denied.  Defendants' motion to dismiss [34] is denied with respect to all Defendants in Count I; denied with respect to the non-nurse Defendants in Counts II-V; granted with respect to the nurse Defendants in Counts II-V; and granted with respect to Defendant Cook County in Count VI.  As Defendants did not independently move to dismiss Count VII, that claim survives.

Dated:  November 24, 2010                 _____

                                          Robert M. Dow, Jr.
                                          United States District Judge