**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELLE WARREN by her Next Friend | ) | |
| DARLENE WARREN and DARLENE | ) | |
| WARREN, as Next Friend and Special | ) | |
| Administrator of JEANNETTA MCDOWELL, | ) | |
| deceased, | ) | 09 C 3512 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Robert M. Dow Jr. |
| vs. | ) | |
| | ) | |
| SHERIFF OF COOK COUNTY THOMAS | ) | |
| DART et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SHERIFF THOMAS DART'S MOTION TO BIFURCATE AND STAY *MONELL* DISCOVERY

NOW COMES Defendant Cook County Sheriff Thomas Dart[1] ("Sheriff Dart"), by Sheriff Dart's attorney Anita Alvarez, State's Attorney of Cook County, through her Assistant State's Attorneys, Michael L. Gallagher, and moves this Court pursuant to Fed. R. Civ. P. 26(d) and 42(b), to bifurcate issues - or in the alternative stay discovery - related to the Plaintiffs' policy claims pursuant to 42 U.S.C. § 1983 ("§ 1983") against Sheriff Dart and Cook County (Municipal Defendants") until the completion of litigation on the underlying individual claims. In support, Sheriff Dart states the following:

### INTRODUCTION

Plaintiffs' Second Amended Complaint ("Complaint") alleges - in part - that Sheriff Dart in his official capacity and Cook County are liable for violating Jeannetta McDowell's ("McDowell") constitutional rights under § 1983 with the following:

---

[1] Defendant Cook County and the Cermak Health Services individual Defendants ("County Defendants") are represented by Cook County Assistant State's Attorney Maureen Hannon, Supervisor of Office's Conflicts Division. The County Defendants join in Defendant Sheriff Dart's motion and the attached stipulation.

"The Constitutional violations…were caused in part by the customs, policies, and practices of the institutional Defendants, as promulgated, enforced, and disseminated by the official Defendants, whereby the institutions and official Defendants charged with ensuring adequate health care to pre‐trial detainees at Cook County Jail failed utterly to provide access to the most basic health care commensurate with a civilized society, in this case and many other cases."
(Plaintiffs' Complaint ¶34, attached as Exhibit A).[2]

Defendant seeks bifurcation for the following reasons: (1) bifurcation will increase judicial efficiency through the Municipal Defendants' stipulation to enter a judgment against them for compensatory damages and reasonable attorney's fees - without an independent determination that the harm was caused by an official custom or policy - if any of the individual Defendants are found to have violated Plaintiffs' constitutional rights; (2) by decreasing the cost of litigation where a vast majority of the *thirty-two* defendants had absolutely no personnel contact with the decedent; [3] (3) and to prevent undue prejudice to the individual Defendants through the introduction of a wide range of extraneous evidence concerning allegedly deficient municipal customs, policies, and practices. Accordingly, Defendant respectfully requests that discovery on Plaintiffs' § 1983 policy claims be stayed until litigation of the underlying constitutional and state law claims against the individual Defendants have been completed.

### STATEMENT OF CASE

Plaintiffs will likely fail to establish that the individual Defendants *who actually had personnel contact with McDowell* were deliberately indifferent to her serious medial needs. On

---

[2] Plaintiffs' *Monell* claim in the present case is the identical claim made in *Demouchette v. Sheriff of Cook County Thomas Dart et. al.,* 09 C 6016, 2011 U.S. Dist. LEXIS 15690 (N.D. Ill. February 16, 2011) (Demouchette Complaint p.12, attached as Exhibit B). Defendants' motion to bifurcate discovery in *Demouchette* was granted by Magistrate Judge Alrander Keys. *See Demouchette v. Sheriff of Cook County et. al.,* 2011 U.S. Dist. LEXIS 15690 (N.D. Ill. February 16, 2011).
[3] Plaintiffs have named the following thirty-two Defendants in their individual capacity: Sheriff Dart, Superintendent Salazar, Director Romero, Asst. Director Kurtovich, Asst. Director Brown, Chief Hargraves, Captain Davis, Captain Harrison, Captain Anderson, Sergeant Milton, Sergeant Garcia, Sergeant Skinner, Sergeant Astaves, Sergeant Edwards, Sergeant Stockdale, Lieutenant Lee, Lieutenant McNamara, Lieutenant Blunt, Lieutenant Pierce, Officer Felton, Officer Davis, Officer Doyle, Officer Brewer, Bettre Barnes, Nurse Hunter, Nurse McDonald, Nurse Mohammed, Nurse Morris, Nurse Pearson, Nurse Sampson, Nurse Smith, and Nurse Vaughn  (Exhibit A, p.1)

June 6, 2008, McDowell was transported to the Cook County Jail ("CCJ") where she went through the Jail's medical intake process. (McDowell's medical records p.1-3, attached as Exhibit C). At that time, McDowell was evaluated by a Cermak Health Services ("Cermak") physician's assistant ("PA") and informed him that she suffered from asthma and had been previously prescribed Albuterol. *Id.* McDowell was immediately transferred to the Cermak emergency room where she was evaluated by a Cermak physician who prescribed McDowell the following medications: Coumadin, Prochlorperazine, Loperamide, Hdroxyzine Pamoate, Belladonna Alkaloids, and an Albuterol inhaler. *Id.* at 7, 11, 21-22. McDowell was then transported and housed at the medical dormitory of the CCJ located in Division 3, Tier B1. *Id.* 6, 75.

On June 7, 2008 at approximately 5:43 a.m. McDowell complained of "shortness of breath." *Id.* at 75. In response, a CCJ officer immediately contacted her supervisor and medical personnel for assistance. *Id.* At approximately 5:46 a.m. a Cermak nurse responded to the Tier and provided McDowell with water and an inhaler. *Id.* McDowell then complained of "chest pains" at approximately 7:22 a.m., and once again the CCJ immediately contacted Cermak medical personnel who responded to the Tier. *Id.* at 76. McDowell was evaluated and transferred to Cermak Hospital for "x-rays" and blood testing at approximately 8:20 before eventually returning to the Tier. *Id.* at 8, 76. At approximately 1:35 p.m., McDowell complained of "blush (reddish) cheeks; light headeded - feel like fainting." *Id.* at 79. The Tier officer immediately contacted her supervisor and medical personnel before she was transported to the Division 3 medical dispensary at approximately 1:45. *Id.* Upon arrival at the dispensary, McDowell was evaluated by medical personnel and received medication before returning to the Tier. *Id.* There is nothing currently in the record to suggest that McDowell made any further complaints to

Sheriff's personnel on June 8, 2011, or that she made any written requests for medical attention during the duration of her detainment at the CCJ.

On June 9, 2011 at approximately 7:00 a.m., CCJ officers arrived at McDowell's cell to perform their "detainee count" at the beginning of the 7:00 a.m. to 3:00 p.m. shift. *Id.* at 47. Once McDowell failed to respond to the officer(s) verbal commands, the officer(s) entered her cell in attempt to assess McDowell's well being. *Id.* The officer(s) did not receive a response and immediately contacted their supervisors and medical personnel. *Id.* At approximately 7:01 a.m. medical personnel responded to the Tier and began their attempts to revive McDowell to no avail. *Id.*

## ARGUMENT

The Supreme Court has advocated limiting discovery as an appropriate means of controlling the significant and often unnecessary costs involved in litigating claims of municipal liability. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167 (1993). Fed. R. Civ. P. 42(b) allows the court to separate claims in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to the expedition and economy of the court. *Berry v. Deloney,* 28 F.3d 604, 610 (7th Cir. 1994). "Only one of these criteria need be satisfied for a court to order a separate trial." *Id.* It is well established that district courts have broad discretion in deciding whether to try issues separately under Rule 42(b). *McLaughlin v. State Farm Mut. Auto Ins. Co.,* 30 F.3d 861, 870 (7th Cir. 1994); *Krocka v. City of* Chicago, 203 F.3d 507, 515 (7th Cir. 2000). The Seventh Circuit has explicitly endorsed bifurcation as a means to avoid "the waste of valuable time and resources of the court" as well as serving the interest furthered by Rule 42(b). *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Fed. R. Civ. P. 26(d) also permits a court to stay discovery on *Monell* claims. *See Treece*

*v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000)(Staying discovery on policy claims serves the interests of convenience, economy, and justice.); *see also Carter v. Dart*, 2011 U.S. Dist. LEXIS 41567 *6 (N.D. Ill. April 18, 2011).

**I.      Discovery on Plaintiffs' *Monell* claims should be stayed pending the completion of litigation against the individual Defendants as it will be conducive to the expedition and economy of this case.**

Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Sheriff and Cook County have a statutory obligation to indemnify their employees and officers. Moreover, Defendants Sheriff Dart and Cook County have provided a "stipulation" that will waive proof of certain elements of Plaintiffs' *Monell* "policy" claim. (*See* Defendants' Stipulation pgs.1-2, attached as Exhibit D). Assuming Plaintiffs prove the individual Defendants violated McDowell's constitutional rights, they are not entitled to recover any additional compensatory damages even if they prevail in their *Monell* claims. *See Thomas.*, 604 F.3d at 311; *see also Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark,* 39 F.3d 812, 821 (7th Cir. 1994); *see also Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1987).

As a result, Plaintiffs can obtain all the relief they are entitled to seek from the Municipal Defendants by merely proving a constitutional violation was committed against them by the individual defendants. *Id.* If Plaintiffs are successful in proving their claims against the individual Defendants, the Municipal Defendants stipulate to judgment being entered against them, and they will pay any compensatory damages and reasonable attorneys' fees awarded to the Plaintiffs. *Id. Thomas v. Sheriff Cook County Sheriff's Dept.,* 604 F.3d 293, 311 (7th Cir. 2009) ("[D]efendants were jointly and severally liable, and allocating damages between the parties for the single indivisible injury alleged in this case was improper."). As result, Plaintiffs' litigation of their *Monell* claim would provide no additional monetary benefit.

This proposed stipulation has been favorably reviewed by this Court in *Cruz v. City of Chicago et. al.,* No. 08 C 2087, 2008 U.S. Dist. LEXIS 101743 *9 (N.D. Ill. 2008), along with

several other district Courts in the Northern District because it ensures that plaintiffs will receive compensation for their injuries if successful with their individual claims, and it increases judicial efficiency through the bifurcation of plaintiffs' *Monell* claims. *See Demouchette v. Sheriff of Cook County et. al.,* 2011 U.S. Dist. LEXIS 15690 (N.D. Ill. February 16, 2011)(J. Keys); *Almaraz v. Officer Haleas et. al.,* 602 F.Supp 2d 920 (N.D. Ill. 2008)(J. Hart); *Parker v. Banner*, 479 F.Supp. 2d 827, 829 (N.D. Ill. 2007)(J. Zagel); *Elrod v. City of Chicago*, No. 06 C 2505, 2007 U.S. Dist. LEXIS 80941 *6 (N.D. Ill. 2007)(J. Brown). As Magistrate Brown concisely summarized:

> Bifurcation in this case means structuring the process to facilitate a more economical and efficient process of discovering the merits of the underlying §1983 claim, at the conclusion of which the parties will have the opportunity to consider the possible settlement or go to trial on the underlying claim, without having incurred the expense of discovery relating to the *Monell* claims. If settlement is not reached and the trial results in a verdict for one or both of the Plaintiffs, the Plaintiffs reserve their right to discover and try the *Monell* claims. The [municipal defendants] stipulation does not eliminate that right. *Elrod*, 2007 U.S. Dist. LEXIS 80941 *8.

Defendant anticipates that Plaintiffs will counter that bifurcation removes an alleged deterrent component of *Monell*. The Supreme Court has made clear that the primary purpose of §1983 damages is to compensate persons for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus,* 435 U.S. 247, 254-255 (1978). In fact, the prospect of a municipality paying damages for constitutional violations will have its own deterrent effect, "and, if damages grow too large, then the city will change its policies, customs, and practices." *Parker v. Banner*, 479 F.Supp. 2d 827, 834 (N.D. Ill. 2007)(J. Zagel). As the Supreme Court stated, "a damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees", and the County Defendants' stipulation ensures that if the Plaintiffs are successful in proving their individual claims, they will receive the damages they are entitled. *Owen v. City of Independence,* 445 U.S. 622, 650 (1980). The fact that compensatory damages

6

can only be collected once supports that staying discovery on the § 1983 claims against the Sheriff of Cook County and the County of Cook in this case will serve the purposes of Rule 26(d).

Most recently in a case involving individual § 1983 and *Monell* policy claims of medical deliberate indifference against the Municipal Defendants, Magistrate Judge Keys granted Sheriff Dart and Cook County's motion to bifurcate pursuant to Federal Rule of Civil Procedure 42(b) and stay discovery of the *Monell* claim. *Demouchette v. Sheriff of Cook County et. al.,* 2011 U.S. Dist. LEXIS 15690 (N.D. Ill. February 16, 2011). In *Demouchette*, plaintiffs alleged that Joseph Demouchette ("Demouchette") went through the CCJ's medical intake process and defendants "failed or refused to indentify [his] serious medical need of drug withdrawal" despite being in need of medical attention. (Exhibit B, ¶ 16). During that intake process, Demouchette denied prior drug use, denied feeling suicidal, and denied past suicide attempts. *Demouchette,* 2011 U.S. Dist. LEXIS at *3-4. As a result, Demouchette was placed in general population in Division 5 where he became "dope sick from heroin withdrawal and vomited multiple times in his cell." *Id.* at ¶ 19. Demouchette allegedly told his cellmate that he was going to "fake hang himself" to get the guards attention. Demouchette tied one end of his bed sheet to the cell window, and the other end around his neck, and proceeded to hang himself until his death. *Id.* at ¶ 22.

In granting Sheriff Dart and Cook County's motion for bifurcation, Judge Keys acknowledged that *Monell* discovery "can add significant time, effort, and complications to the discovery process." *Demouchette*, 2011 U.S. Dist. LEXIS at *19; *citing Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). In *Demouchette*, plaintiffs document requests included the following: (1) "all of the Sheriff Department's 'policies, procedures, requirements, perquisites, General Orders, practices, rules, departmental memorandums and/or

departmental practices"; and (2) a "complete computer database of investigations undertaken by the Sheriff's Department, all documents relating to prior claims of suicide or inadequate medical care…" *Id.* at *20-21. Judge Keys held that these requests, among others, proved the "burdens of proceeding with *Monell* discovery outweigh the potential costs of time and money associated with disputes that may arise as a result of a bifurcation of claims and a stay of *Monell* discovery." *Id.* at 28.

In the present matter, Plaintiffs have issued even more expansive interrogatories towards Sheriff Dart and Cook County in their official capacities (Warren interrogatories, attached as Exhibit E and F):

- Identify all complaints, grievances, investigations, and/or litigation where you have been named as a defendant relating to an incident that occurred during your employment at the Cook County Jail. With respect to each matter identified, describe all relevant facts, including but not limited to the following:
  (a) Name, IR #, date of birth, and social security number of the complaining parties;
  (b) Dates of case or and complaint;
  (c) Persons alleged to be liable in each incident;
  (d) Type of medical care that was alleged refused;
  (e) All determinations made;
  (f) Outcome of case, or if case pending, status of case; and
  (g) All communications relating to the complaint or investigation.

- Identify all complaints, grievances, investigations, and/or litigation relating to denial of medical care relating to asthma or cardiac thrombosis at the Cook County Jail from January 2006 to present. With respect to each matter identified, describe all relevant facts, including but not limited to the following:
  (a) Name, IR #, date of birth, and social security number of the complaining parties;
  (b) Dates of case or and complaint;
  (c) Persons alleged to be liable in each incident;
  (d) Type of medical care that was alleged refused;
  (e) All determinations made;
  (f) Outcome of case, or if case pending, status of case; and
  (g) All communications relating to the complaint or investigation.

- Describe in detail Defendant's past or current policies, practices and procedures, whether written or verbal, *de facto* or official, and any changes or amendments, thereto, regarding emergency response to medical incidents, including the interaction between the Cook County Sheriff's Office, Cermak Health Center, and the City of Chicago.

While Plaintiffs' document requests towards Sheriff Dart and Cook County are equally expansive. (Warren document requests, attached as Exhibit G and H):

- All financial documents, budgets, income/expense reports, financial documents pertaining to the number of nurses, number of physicians and number of officers to watch the division where Plaintiff was being held and as it pertains to the Cook County Jail from 2006 to the present.

- All minutes, whether written or oral, from the Cook County Board related to providing and/or funding medical care to detainees from 2006 to the present.

- Any and all records as it relates to Cook County's compliance with Duran v. Dart.

- Monthly grievance statistic summaries related to medical care, staffing and funding from 2006 to 2009.

- All documentation reflecting, referring, and/or relating to investigations into allegations, grievances, or complaints relating to failure to provide medical care for detainees at the Cook County Jail from January 2006 to the present.

- All Cook County Jail policies, procedures, requirements, prerequisites, General Orders, practices, rules, and regulations regarding responding to detainee medical emergencies from January 2006 to the present.

- All Cermak Health Services policies, procedures, requirements, prerequisites, General Orders, practices, rules, and regulations regarding medical intake of detainees from January 2006 to the present.

- All IAD and OIG [Sheriff's Police Investigations]investigation files relating to failure to provide medical care and/or detainee deaths, which are in the possession and control of Defendants from January 1, 2006 to the present.

The decision to stay discovery and bifurcate the actions against the individual Defendants from the *Monell* issues is supported by weighing the costs imposed upon the parties and the Court during *Monell* discovery, against the putative benefit that a *Monell* claim provides. Going forward with *Monell* discovery in this case will place undue, unnecessary, and costly burdens upon the Defendants, Plaintiff, and this Court. Plaintiffs' policy claims implicate the Sheriff and the County's training, staffing, supervision, policies and procedures provide a "perfect storm"

whereby the individual Defendants could violate McDowell's constitutional rights. Plaintiffs' allege that CCJ officers and Cermak Health Services employees routinely engage in misconduct - including the deliberate indifference to detainee's medical needs - and that there is an unwritten policy or practice by the Sheriff and County that condones or turns a blind eye to such conduct.

Plaintiffs' discovery requests at this point in the litigation have been exceedingly expansive, onerous, and consuming. [4] Forcing Defendants to comply with Plaintiffs' measureless requests would require a momentous amount of manpower, time, and money to produce and sort through potentially tens of thousands of documents that are entirely unrelated to the alleged specific act(s) of deliberate indifference that occurred in June 2009. Simply put, there is no quantitative justification for failing to stay *Monell* discovery.

## II. Bifurcation will prevent overly prejudicial *Monell* evidence from being admitted at trial against the individual Defendants.

Bifurcating Plaintiffs' *Monell* claims will also serve to protect the individual Defendants from the prejudicial effect at trial of introducing a wide range of extraneous evidence concerning allegedly deficient municipal customs, policies, and practices. As set forth in the Plaintiffs' Complaint, document requests, and interrogatories, they will attempt to prove their *Monell* claim by introducing evidence regarding alleged incidents of medical indifference from both the Cook County medical facilities and the CCJ spanning a five year time period.

It appears Plaintiffs intend to use these reports along with five years of alleged institutional shortcomings as the brush used to paint the individual Defendants in a prejudicial color. The result at trial will be juror's improperly judging individual Defendants based on an allegedly broken system, instead of properly judging these Defendants on their own actions. *See*

---

[4] The parties' discovery on Plaintiffs' individual claims will be no less laborious. Plaintiffs have issued individual interrogatories and document requests for each of the thirty-two individual Defendants and recently noticed the depositions of forty-two individuals.

*Ojeda-Beltran v. Lucio, et. al.,* No. 07 CV 6667, 2008 U.S. Dist. LEXIS 54116 at \*3 (N.D. Ill. July 16, 2008)(J. Aspen) (bifurcation is appropriate to protect against undue prejudice to individual defendant officers where plaintiff's intended to prove their *Monell* claim "through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers"); *see Monell. Myatt v. City of Chicago,* 816 F. Supp. 1259, 1264 (N.D. Ill. 1992)(In deciding whether to order separate trials, we will consider whether the evidence required for each issue overlaps).

Defendants are also at a loss to understand how medical and correctional documentation regarding the treatment and detention of hundreds of thousands of detainees over a five year period is relevant to Plaintiffs' claims against the individual Defendants? The Plaintiffs will only prevail against the individual Defendants if they prove that they were deliberately indifferent to McDowell's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002). The court in *Farmer* analogized deliberate indifference to criminal recklessness. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). "An act is reckless in the pertinent sense when it reflects complete indifference to risk-when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir. 1988)(*en banc*). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837. Mere negligence or even gross negligence does not amount to deliberate indifference. *Archie,* 847 F.2d at 1219.

In stark contrast, Plaintiffs will only prevail on their *Monell* claims against the County Defendants if they prove the following: (1) an express policy that causes a constitutional

deprivation when enforced; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or, (3) a constitutional injury caused by an individual with final policy making authority. *Baskin v. City of Des Plaines*, 183 F.3d 701, 704-705 (7th Cir. 1998).

The contrasting standards between *Monell* and individual liability establish that an individual cannot be liable in a §1983 action unless he or she caused or participated in an alleged constitutional deprivation. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The Plaintiffs' Complaint makes it clear that they intend to use expert testimony based on expansive *Monell* discovery irrelevant to the individual claims, to argue that the individual Defendants are bad apples from a poisoned tree and should be treated accordingly. Given the broad scope and potential unfair prejudice of such wide ranging allegations, there is a "real danger" that evidence admissible on the *Monell* issues "will contaminate the mind" of the jury in its deliberation of the liability of the individual defendants. *Ojeda-Beltran*, 2008 U.S. Dist. LEXIS 54116 at *3; *quoting Ismael v. Cohen*, 706 F.Supp. 243, 252 (S.D.N.Y. 1989). Bifurcation of the *Monell* claim would eliminate this potential prejudice.

## CONCLUSION

WHEREFORE, for the reasons stated, Defendant Sheriff Thomas Dart respectfully requests this Honorable Court to (1) bifurcate Plaintiffs § 1983 claims against Defendants Thomas Dart and Cook County pursuant to Rule 42(b); and (2) stay both discovery and trial on those claims. In the alternative, should this Court decide not to bifurcate Plaintiff's § 1983 claims, Defendants request that discovery on the *Monell* claims be stayed until the completion of fact discovery on the claims against the individual Defendants. At that time, the Court may reassess whether *Monell* discovery should be pursued, and if so, what the proper scope should be. *Medina v. City of* Chicago, 100 F.Supp.2d 893, 898 (N.D. Ill. 2000).

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

*/s/ Michael L. Gallagher*
Michael L. Gallagher
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3124

13