**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELLE WARREN by her Next Friend | ) | |
| DARLENE WARREN and DARLENE | ) | |
| WARREN, as Next Friend and Special | ) | |
| Administrator of JEANNETTA MCDOWELL, | ) | |
| deceased, | ) | 09 C 3512 |
| | ) | |
| Plaintiffs, | ) | Honorable Judge |
| | ) | Robert M. Dow, Jr. |
| v. | ) | Magistrate Young Kim |
| | ) | |
| SHERIFF OF COOK COUNTY THOMAS | ) | |
| DART, in his official and individual capacity, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COOK COUNTY'S RESPONSE TO PLAINTIFFS' AMENDED**
**MOTION TO COMPEL PRODUCTION OF A 30(B)(6) WITNESS**

NOW COME Defendants Cook County and Nurse Barnes, Nurse Pearson, Nurse Mohammed, Nurse Hunter, Nurse Vaughn, Nurse McDonald, Nurse Sampson, Nurse Smith and Nurse Morris ("the Nurse Defendants") (collectively "Defendants"), by and through their attorney, Anita Alvarez, State's Attorney of Cook County, Illinois, through her assistant Maureen Hannon, responds to the motion to compel discovery filed by the Plaintiffs as follows:

**INTRODUCTION**

Plaintiffs' "Amended Motion to Compel Production of a 30(b)(6) Witness" [Dkt # 191] should be denied as to Cermak. The Topic which Plaintiff seeks to cover is Topic 13 which pertains to *"all countermeasures, reviews responses and/or investigations Cermak undertook as a result of the death of Ms. McDowell."* This request should be denied for several reasons: (1) The investigation taken by the medical health professionals at Cermak and any conclusions of the investigation are privileged under the Illinois Medical Studies Act; (2) Plaintiffs will suffer

1

no prejudice by not receiving this information; and (3) the public policy and the harm to Cermak

for the future if these post-mortem examinations are to become public outweighs the Plaintiffs'

need for the information.

> **I.** **The Investigation Taken By The Medical Health Professionals At Cermak And The Conclusion Of The Investigation Are Privileged Under The Illinois Medical Studies Act, therefore a 30(b)(6) deposition on this topic would not be appropriate.**

The information regarding post mortem investigations is privileged and not subject to

disclosure under the Illinois Medical Studies Act, 735 ILCS 8/8-2101 which specifically states,

**"All information, interviews, reports, statements, memoranda, ...of a health care delivery**

**or facility…used in the internal quality control or of medical study for the purpose of**

**reducing morbidity or mortality, or for improving patient care…shall be privileged,**

**strictly confidential…"** The next section provides that, **'such information, records, reports,**

**statements, notes memoranda or other data, shall not be admissible as evidence, nor**

**discoverable in any action of any kind in any court…"** 735 ILCS 5/8-2012.    There was a

Mortality Review Report for Patient Safety and Quality Improvement conducted by Cermak

following the death of Ms. McDowell as is the case of every death at the Department of

Corrections and that is the information targeted by paragraph 13, and this information should not

be  subject to discovery.  Inquiry seeking to find what *"countermeasures, reviews, responses,*

*and or investigations"* which the corporation  conducted after the death and what information it

found is clearly privileged under the Act. *See e.g.  Niven v. Siqueira*, 109 Ill.2d 357 (1985);

*Prichard v. Swedish American Hospital*, 191 Ill.App.3d 388, 399 (2d Dist. 1989) (the nature and

content of the process itself is privileged and confidential). See also the Affidavit of Dr. Ting

attached and incorporated hereto as Exhibit A.

Plaintiffs maintain that because 735 ILCS 5/8-2102 is a state statute, it should not be applied here since the case involves a federal claim. Plaintiffs stress that this case is about deliberate indifference under federal law but conveniently ignore that six of the seven counts of the complaint are based on Illinois state law of negligence not a constitutional claim. The applicable privileges under Illinois law are necessarily relevant to the defenses and should be able to be utilized by the County. Plaintiffs maintain that the state law privilege should not be applied here because they believe the information sought is critical to their *Monell* claims relating to Defendant's policies and practices (Dkt #191 at ¶6) and because the 30(b)(6) deponents testified that they read the report. However, neither one of those reasons justify the disclosure of the mortality and morbidity report**.** To establish liability under *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S. Ct. 2018, 2036 (1977), plaintiffs must allege a "specific pattern or series of incidents that support the general allegation" that a policy, custom or practice was in existence in the governmental entity. *Hossman v. Blunk*, 784 F.2d 793, 796 (7th Cir. 1986). Moreover, a plaintiff must establish that the municipal policies or customs were the "moving force" behind the alleged constitutional tort. *Polk County v. Dodson*, 454 U.S. 312, 326 102 S.Ct. 445, 552 (1981); *Minix v. Canarecci*, 597 F.3d 824 (7th Cir. 2010). A mortality report prepared by a physician, after an individual had passed away, which was based on his own reading of medical records and documents and speaking to witnesses is hearsay and necessarily cannot support a *Monell* claim that would have had to have been in effect *before* the injury.

The Plaintiffs also rely on *Memorial Hosp. for McHenry v. Shadur*, which held that if a claim arises from a federal law, a federal court is not required to follow any state laws regarding

privileged material.  *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th

Cir. 1981).  But Plaintiffs failed to note that the court in *Shadur* goes on to say that:

> "This does not mean, however, that federal courts should not consider the law of
> the state in which the case arises in determining whether a privilege should be
> recognized as a matter of federal law.  A strong policy of comity between state
> and federal sovereignties impels [sic] federal courts to recognize state privileges
> where this can be accomplished at no substantial cost to federal substantive and
> procedural policy."  *Id.* citing *United States v. King*, 73 F.R.D. 103, 105
> (E.D.N.Y. 1976).

*Shadur* continues by describing a frame work on how to decide whether or not to apply a

state privilege law to a federal claim.  The court should compare the need of this request to the

particular case verses the importance of the policy being furthered by the privilege allowed in the

state law.  *Id at* 1061-1062. Similarly the other case relied on by the plaintiff is a district court

case,  *Estate of Belbachir v. County of McHenry,* 2007 WL 2128431 (N.D. Ill. 2007),  where the

court was faced with determining which of the 68 documents would be covered by the Illinois

Medical Act privilege. The court determined that the documents created during the core team

meeting and during the "root cause analysis" were privileged and not subject to disclosure and

the documents created before the death of the detainee were subject to disclosure.  The *Belbachir*

opinion addressed the balancing test that needs to be made in deciding whether to apply the

Illinois privilege in state court. *Id* at p. 6-7. Conducting the balancing test to the case here weighs

in favor of applying the privilege to the mortality and morbidity report and a deposition as to

how it was conducted.

Courts have applied state privilege laws in other federal cases.  In *Neuberg v. Michael

Reese Hosp. & Medical Ctr.* the court upheld the state privilege of doctor-patient confidentiality

where the plaintiff was requesting records of other patients who filed suit against the defendant.

The court ruled, "Balancing the patients' interest in confidentiality of their medical records against plaintiffs' need for discovery, this court does not perceive sufficient need to compel the production of potential confidential information when plaintiffs can investigate the court files in the other lawsuits against Michael Reese." *Neuberg v. Michael Reese Hosp. & Medical Ctr.*, 75C 3844, 1992 WL 477018 (N.D. Ill. Jan. 13, 1992); 1992 LEXIS 366 (C. Norgle 1992). *Neuberg* is analogous to the instant case since the Plaintiffs have other materials available to them that will give them the same information as the report would. Plaintiff reference several cases in which other federal jurisdictions did not apply a state law privilege to a federal claim (Dkt 191 ¶ 17) but none of those are seventh circuit cases with only one federal count and six state law claims. The Federal Rule of Evidence 501 permits the state privilege to be applied and that is what should be done in this case. See e.g. *Garza v. Scott and White Memorial Hospital* 234 F.R.D 617, 23 (W. Dist Texas 2005)(Applying the state law medical privilege notwithstanding the presence of federal claims in the case.) [1]

Plaintiffs have had access to all of the medical records, reports, x rays and deposition testimony of all the individuals who worked with or near the plaintiff. That is the best evidence to support the claims of the decent. The post death report of Dr. Ting is necessarily hearsay as it is a review of documents and discussion with individuals that made up the basis for the report. Under the "balancing test" the need for the privilege outweighs the need for the report since the Plaintiffs have so much of the first hand evidence already at their disposal.

---

*See* Bassler, Alissa Marie, *Federal Law Should Keep Pace With States And Recognize A Medical Peer Review Privilege.* 39 Idaho L. Rev. 689 (2003). "In essence, Rule 501 authorizes federal courts to use "reason and experience" to 'continue the evolutionary development of testimonial privileges."

## II.    Plaintiffs will suffer no prejudice by not being able to take a deposition on this issue or receiving this report.

Plaintiffs have deposed all of the Nurse defendants in the case. They have reviewed the personnel files of all of the defendant nurses in the case. They have also recently deposed the Physician Assistant, Glenn Trammell, who treated Ms. McDowell in the emergency room on the first of her three nights at the Cook County Department of Corrections.   Plaintiffs have received all of the medical records and sheriffs records pertaining to the case.   Critically, Plaintiffs have received the autopsy report prepared by the medical examiner.  Finally, the Office of the Sheriff of Cook County performed a complete and thorough investigation of the cause of death of Jeanetta McDowell including interviewing all the detainees on her tier, the officers, and conducting an autopsy.  This has been produced to the Plaintiff.  The full investigation conducted by the Cook County Sheriff 's Investigator  Raher which is twelve pages in length and contains notes from interviews with Sheriffs employees and inmates witnesses on the same tier at the time. Investigator Raher's deposition was also taken.

It is only Cermak hospital's mortality and morbidity report which the County asserts is privileged under the Act.  Moreover, the three page post mortem investigation conducted by Dr. Ting is necessarily hearsay and is merely his opinion of what happened and things to think about for the future. (See Ting Affidavit). Contrary to the argument in Plaintiffs' instant motion that, *"the information relating to countermeasures taken...are relevant to whether Defendants are deliberately indifference to deaths at the jail and did not make reasonable efforts to prevent future deaths"* the investigation and report by Dr. Ting will not make plaintiffs' case more likely true than not.

In fact, the deposition of the medical examiner supports the position that the mortality and morbidity report conducted by Dr. Ting was reliant on what the medical examiner had to say and the Plaintiffs have deposed the medical examiner. See Plaintiff's Amended Motion (Dkt #191-1 at 4) (*Q. Do you recall what the conversation was that you had with Dr. Ting? A. Well, it would typically be something along the lines of Dr. Ting wanting to know what my determination of cause and manner of death was and then me calling back when I had made that determination, to inform him.*)  See also the affidavit of Dr. Ting wherein he relies on the report of the medical examiner as one the factors in his investigation. Thus, the Plaintiff has the same exposure to the best evidence as Dr. Ting did. Dr. Ting's investigation and morbidity report is not the best evidence but rather his extrapolation of the data.  As such, it is unreliable hearsay and when balanced against the chilling effect of discouraging Cermak from conducting these mortality and morbidity examinations the scale should tip in favor of not having to give a 30(b)(6) deposition on this privileged material.

In the motion for a 30(b)(6) witness, Plaintiffs state that the information is "critical" but never state why.  (Dkt. #191 ¶6).  The Plaintiffs need to illustrate why the information requested is necessary to the case when the information requested is considered to be privileged. "Similarly, the mere fact that certain information may be relevant or useful does not establish a 'particularized need' … The party seeking disclosure … must show a 'compelling necessity' for the specific information requested." *Pudlo v. Adamski*, 91C 7474, 1992 WL 27002 (N.D. Ill. Feb. 12, 1992); 1992 LEXIS 1470, (R. Guzman 1992).   While there may be some benefit for the Plaintiffs in receiving the privileged material, the Plaintiffs never state what that benefit is or how it is more important than the public interest in the privilege.  Therefore, the public interest

of allowing doctors to freely discuss cases in order to improve patient care is larger than the supposed benefit to the Plaintiffs in receiving the report.

Moreover, the fact that the 30(b)(6) witnesses from Cermak, the acting Chief Medical Officer and the acting Chief Operations Officer, read that mortality and morbidity report does not make disclosure any more compelling. The heads of the facility where the individual died should read the report and Cermak employees should not be afraid that because they read it, the privilege against disclosure is somehow waived. The fact that other people in the administration read the report simply does not support or detract from plaintiff's claim. Finally as the affidavit of the individual who conducted the investigation attests, he does not have an independent recollection of what anyone told him and has no notes on the investigation. Therefore a 30(b)(6) deposition on this investigation would not be fruitful.

Defendant Cermak will not be calling Dr. Ting in the case at trial as his affidavit makes clear he has not independed recollection of the investigation and did not treat Ms. McDowell. The fact that Dr. Ting was disclosed on the initial Rule 26 disclosures or in discovery is merely attributable to the full disclosure of the case by Cermak.

### III.   The Public Policy And The Harm To Cermak For The Future If These Post-Mortem Examinations Are To Become Public Outweighs The Plaintiffs' Need For The Information.

The state's purpose in protecting disclosure is to encourage frank discussions in evaluating problems in care in order to provide a higher quality of care. There is a strong interest in keeping this report privileged since it allows the doctors to openly study what could have gone wrong and to improve so it will not happen again. "[T]he public has a strong interest in preserving the free flow of such information because it can result in improved patient care."

*Robbins v. Provena,* 03C 1371, 2004 WL 502327 (N.D. Ill. March 11, 2004); 2004 LEXIS 3878, (J. Zagel 2004). The *Robbins* court recognized the importance of this privilege and denied the plaintiff's request for certain information due to the privilege set forth in 735 ILCS 5/8-2102. If this court rules that the report is subject to disclosure it may cause a chilling effect and most likely stop the candid discussion and analysis that the purpose of the review is designed to serve. *See* Bassler, Alissa Marie. *Federal Law Should Keep Pace With States And Recognize A Medical Peer Review Privilege.* 39 Idaho Law Review 689 (2003). (When courts refuse to apply the state privilege they are ignoring a state statute designed to improve the quality of care for patients.)

A similar rationale of protecting the disclosure for the greater good of honest frank evaluation is found in the refusal to admit post remedial measures in other types of litigation. See e.g. *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 103 at 111 (1) a strong public policy favors encouraging improvements to enhance public safety; (2) subsequent remedial measures are not considered sufficiently probative of prior negligence, because later carefulness may simply be an attempt to exercise the highest standard of care; and (3) a jury may view such conduct as an admission of negligence citing *Herzog*, 167 Ill.2d at 300.

In this case, the mortality and morbidity report following the death of Ms McDowell is a self-evaluative self-critical analysis of one event conducted for the purpose of making the provision of health care in the Department of Corrections better at every opportunity. State law protects and encourages that process from disclosure in Illinois because of the public policy benefit to this practice. Plaintiffs chose to file one federal claim and six state law claims. The defendants did not have the choice of forum and they should not be denied the right to a valid state privilege defense for health care providers because the Plaintiff chose to file in federal court rather than state court. This decision regarding the application of the state privilege is a

9

discretionary one to be made by the court and on a case by case basis rather than an impermissible application of state law to a federal claim as suggested by the Plaintiffs.

In this case, the privilege set forth in the Illinois Medical Studies Act, 735 ILCS 8/8-2101 which specifically states, "All information, interviews, reports, statements, memoranda, ...of a health care delivery or facility…used in the internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care…shall be privileged, strictly confidential…" and that 'such information, records, reports, statements, notes memoranda or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court…" 735 ILCS 5/8-201 should be applicable to Cermak, the County Health Care provider to the Department of Corrections. Particularly here where the attorneys have access to all of the records and all witnesses who have had interaction with Ms. McDowell.

## CONCLUSION

Plaintiffs' "Amended Motion to Compel Production of a 30(b)(6) Witness" [Dkt # 191] should be denied as to Cermak. The topic which Plaintiff seeks to cover is Topic 13 which pertains to *"all countermeasures, reviews responses and/or investigations Cermak undertook as a result of the death of Ms. McDowell."* The investigation taken by the medical health professionals at Cermak and any conclusions of the investigation are privileged under the Illinois Medical Studies Act; Plaintiffs will suffer no prejudice by not receiving this information; and the public policy and the harm to Cermak for the future if these post-mortem examinations are to become public outweighs the Plaintiffs' need for the information.

**WHEREFORE,** the individual Cermak Defendants and the County of Cook respectfully request that this Court deny the request for a second 30(b)(6) deposition on the topic of post death investigation and preparation of the mortality and morbidity report conducted by Cook County.

Respectfully submitted,

ANITA ALVAREZ
Cook County State's Attorney

By: /s/ Maureen O. Hannon

Maureen Hannon (ARDC #6206983)
Assistant State's Attorney
Conflict Counsel Unit
Office of the State's Attorney of Cook County
69 W. Washington Suite 2030
Chicago, IL 60602
(312) 603-1424