UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELLE WARREN by her Next Friend DARLENE WARREN and DARLENE WARREN, as Next Friend and Special Administrator of JEANNETTA MCDOWELL, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>SHERIFF OF COOK COUNTY THOMAS DART, in his official and individual capacity, et. al.<br><br>Defendants. | 09 C 3512<br><br>Honorable Judge<br>Robert M. Dow, Jr.<br><br>Young B. Kim |

## AFFIDAVIT OF ANDREW TING M.D

I, Andrew Ting, a physician at Cermak Health Services, am familiar with the Mortality Review Report – Patient Safety and Quality Improvement Report that was prepared following the death of Jeanetta McDowell on July 8, 2008 because I authored the document and conducted the review. If called to testify as a witness I would state the following under oath:

1. A Report such as this is prepared each time there is a death at the Cook County Department of Corrections.

2. Each page of the three page report includes the following language at the bottom of the page: *"This report has been prepared as part of a self-evaluative and self critical analysis of a Sentinel event, in order to identify potential improvements in the quality of health care and thereby to decrease the likelihood of similar occurrences in the future. Upon the advice of counsel, this document and its contents are confidential and privileged as the work-product of patient safety activities (42 USC Sec. 299b-22 and 735 ILCS 5/8-2101 et. seq.).* In the 15 years in which I have been sitting as one of the members on the Patient Safety and Quality Improvement Committee, we have never had to turn over or disclose the summation of the Mortality Report in litigation and we have always considered it privileged.

3. I do not have an independent recollection of preparing this report although I have reviewed it and it consists of three pages in our standard committee form. I did not retain my notes of individuals I interviewed or the copies of documents or records I reviewed in preparation of the report.

4. It is typically my practice to review the following in order to prepare the report and I have no reason to believe I did not follow the same procedure in this case:

- Medical records of the detainee held at the Department of Corrections
- Intake documents
- Cerner computer records
- Lab tests
- Pharmacy records
- The report of the Medical Examiner
- I typically would speak to the security/ sheriff's officers and the nurses on duty for any additional information which may be relevant to the cause of death.

5. I have no independent recollection of any conversations I had with any of the people interviewed.

6. When completed, the Morbidity Report is shared with the Patient Safety and Quality Improvement Committee members and no one else.

DATE: 9/19/2013