THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELLE WARREN by her Next Friend DARLENE WARREN and DARLENE WARREN, as Next Friend and Special Administrator of JEANNETTA MCDOWELL, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> COOK COUNTY, *et al.*, <br><br> Defendants. | <br><br><br><br><br><br><br><br> Case No. 09 C 3512 <br><br> Judge Robert M. Dow Jr. <br> Magistrate Judge Young B. Kim |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR AMENDED MOTION
TO COMPEL PRODUCTION OF 30(B)(6) WITNESS**

Plaintiffs, through their undersigned counsel, respectfully submit this reply in support of Plaintiff's Amended Motion to Compel Production of 30(b)(6) Witness. Plaintiffs address the responses of both the Cook County Sheriff, (Docket # 192), and Cook County Cermak Health Services, (Docket # 193), in this Reply. Plaintiffs' motion to compel 30(b)(6) depositions on the requested topics should be granted. In support, Plaintiffs state as follows:

Cook County Sheriff's Response (Docket # 192)

The Sheriff argues in its response that Plaintiffs' motion should be denied as to categories 2 and 6 because "the matter was never forwarded to OPR for further investigation" and "there was no OPR investigation in this matter." (Dkt. # 192 at ¶¶ 4,

5.) Defendants' argument is not supported by any citation to the record or declaration. Categories 2 and 6 address the procedural process relating to investigations of officer and employee involvement in incidents of failure to provide medical care and process and procedures governing disciplinary action initiated, implemented, or recommended against employees of the Department of Corrections.

The documents in this case, produced by Defendant Sheriff's Office, contradict Defendant's assertions to this Court. The documents produced by Defendant show that an OPR Investigation was in fact conducted. (*See* Exhibit 1, OPR Investigation # 2009-0409; *see also* Exhibit 2, Aug. 2011 Email from Gallagher.) The documents show that OPR investigation case number #2009-0409 was initiated on July 13, 2009 and that Investigator Michael Magliano was the assigned investigator. (*Id*.) Therefore, Defendants' objection should be overruled as it is patently untrue.

Since an OPR investigation was conducted, it is relevant to Plaintiffs' claims. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Plaintiffs require discovery relating to investigations of employees of the Cook County jail to support allegations that Defendants condone constitutional violations and encourage employees to disregard what policies and procedures were in place by failing to discipline employees for complaints of failure to provide medical care and/or arising from the death of a detainee. *See Woodward v. Corr. Med. Services of Illinois, Inc.*, 368 F.3d 917, 929 (7th Cir. 2004); *see also Obrycka v. City of Chicago*, 2012 WL 601810, *6 (N.D. Ill. Feb. 23, 2012). Plaintiffs have the

right to depose a 30(b)(6) designee of the Sheriff's office regarding Exhibit 1 and to question that designee about the processes and procedures relating to OPR investigations and whether this investigation deviated from the process and procedures in effect, including but not limited to, whether the allegations against employees were sufficiently investigated, whether witnesses were interviewed, whether records of complaints and investigations are properly maintained. Plaintiffs also have the right to question a Sheriff's office 30(b)(6) designee regarding the processes and procedures governing discipline in companion with or as a result of OPR investigations from 2007 to the present, into employee or officer wrongdoing, including but not limited to whether officers are properly and sufficiently disciplined for failing to provide access to medical care. These designated topics for testimony are highly relevant and necessary to Plaintiffs' custom and practice claims. *See, e.g., Garcia v. City of Chicago*, 2003 WL 22175618, at *2 (N.D.Ill. Sept. 19, 2003); *Talbert v. City of Chicago*, 236 F.R.D. 415 (N.D.Ill. 2006).

Defendant also objects to Plaintiffs' request to depose a designee regarding investigations of officers involved in incidents of failure to provide medical care from 2007 to the present. However, municipal policy claims allow a broad inquiry into police practices and procedures, complaints, similar incidents, and internal disciplinary actions beyond the incident at issue here. *Langford v. City of Elkhart*, 1992 WL 404443 (N.D.Ind. April 21, 1992); *Gibson v. New York City Police Officer Carmody*, 1990 WL 52272

3

(S.D.N.Y. April 19, 1990); *Hall v. Helms*, 118 F.R.D. 51, 53-54 (W.D.N.C.1987); *Scouler v. Craig*, 116 F.R.D. 494 (D.N.J.1987). Moreover, disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi. *See Okai v. Verfuth*, 275 F.3d 606 (7th Cir.2001); *Treece v. Hoschstetler*, 213 F.3d 360, 363 (7th Cir.2000); *Wilson v. City of Chicago,* 6 F.3d 1233 (7th Cir.1993); *see also Edwards v. Thomas*, 31 F.Supp.2d 1069 (N.D.Ill. Jan. 7, 1999).

In *Garcia v. City of Chicago*, the jury returned a verdict in favor of the plaintiff, Garcia, and against the City of Chicago finding that Garcia sustained injuries, which "were directly caused by defendant City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago police officers who use excessive force against individuals." 2003 WL 22175618, at *1. In *Garcia*, the Court permitted discovery of the City's CR Files for several years, which are similar to Defendants' OPR files. The court affirmed the jury verdict and found:

> The evidence established that during the relevant time, the pattern and practice within the CPD in handling allegations of off-duty police officer violence was defective and insufficient in the following ways: investigations were incomplete, inconsistent, delayed, and slanted in favor of the officers; investigative leads were not pursued; incidents were covered-up; evidence was destroyed; officers were not arrested; and private citizens were discouraged from filing complaints about police officer misconduct. There was evidence that the CPD protocol was to treat police officers more favorably than other citizens when investigating and prosecuting police officers misconduct.

*Id*. at *2 (internal citations omitted); *see also Bond v. Utreras*, 2006 WL 695447, *4 (N.D.Ill. March 10, 2006) (finding discovery of disciplinary data "may be admissible to prove

4

motive, intent, absence of mistake, opportunity, preparation, and plan." (citing *Wilson v. City of Chicago*, 6 F.3d 1230, 1238 (7th Cir.1993)). The court noted that the City's attempts to "hide its practices from scrutiny, because it wants this Court to believe, as it ultimately wants the jury to believe, that its policies and practices are irrelevant to Ms. Bond's claims," "violates both basic expectations about the nature of civil litigation, as well as the remedial purpose of § 1983." *Id*. (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2d Cir. 1999) ("A judgment against a municipality . . . can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue.")). Thus, because an OPR investigation was conducted and because case law demonstrates that OPR investigations and procedures and processes are relevant to Plaintiffs' claims, Plaintiffs' motion to compel Defendants' to produce a 30(b)(6) witness should be granted.

Defendant Sheriff's office also objects to Plaintiffs' motion to compel a 30(b)(6) designee to testify regarding all incidents of death from asthma and/or myocarditis for the five year period from 2003 to 2008. (Dkt. # 192 at 4.) Defendant argues that Plaintiffs' request should be denied because Plaintiffs' motion to compel documents was denied. However, Defendant agreed to produce investigatory files for asthma/myocarditis deaths at the jail within the requested time period and to inquire as to what would be involved in locating and producing the files of investigations into complaints of

5

deliberate indifference/failure to provide medical care relating to asthma/myocarditis.[1]
(*See* Exhibit 3, Emails between Counsel.) Furthermore, there is nothing improper about seeking deposition testimony of a 30(b)(6) designee to explain and discuss the investigations just because the subject matter is also contained in documents.

Defendant Sheriff's Office also erroneously claims that "this Court previously stated that Plaintiff's proposed topic was inappropriate for Rule 30(b)(6) deposition because Plaintiff's are requesting that Sheriff Dart produce an individual to testify regarding a subject matter that covers thousands of investigations, tens of thousands of documents, and involves hundreds of CCDOC personnel." (Dkt. # 192 at 4.) Defendant does not cite to the actual transcript and misstates what the Court stated. The Magistrate Judge did not state that Topic 17 was inappropriate for a Rule 30(b)(6) deposition. Regarding Plaintiffs' Topic No. 17, the Magistrate Judge stated as follows:

> Topic 17, this topic covers detainee deaths from 2007 to the present and those involved in the medical care of the detainees and supervisors and those responsible for the officers involved and any investigations that followed. I do have some concerns about the breadth of the topic and the scope and how it fits into this particular case because we're not talking about all detainee deaths.
>
> We're talking about a situation where perhaps somebody wasn't conscious, or I should say careful enough to address certain complaints fast enough. We're talking about promptness of medical care, perhaps. So, you know, you should keep that in mind in addressing topic 17. It does seem very broad.
>
> (Exhibit 4, 9/6/13 Transcript at 12:8-20.)

---

[1] Despite Defendant's agreement, as of the date of this reply, Defendant has yet to produce the documents or an affidavit regarding the production. (*See* Ex. 3.)

Plaintiffs' counsel took the Magistrate Judge's statements into consideration and narrowed the focus of the request from all deaths to only those of the type that was suffered in this case, *i.e.*, deaths from myocarditis/asthma. Defendants have not provided any evidence to support the claim that it "covers thousands of investigations, tens of thousands of documents, and involves hundreds of CCDOC personnel." Defendant does not provide an affidavit or documents supporting their claim. In fact Defendant has claimed that there are zero investigations regarding deaths from asthma and/or myocarditis. (*See* Exhibit 3, Emails between Counsel.) Whether it is "thousands" of investigations or zero, is clearly at dispute and Defendant has provided no evidence to support either contention. On this basis alone, Defendant's argument should be rejected. *See, e.g., Flomo v. Bridgestone Americas Holding, Inc.*, No. 1:06-cv-00627-DFH-JMS, 2009 WL 1456736, *2 (S.D. Ind. May 20, 2009) ("The party opposing discovery has the burden of showing the discovery is . . . unduly burdensome."); *Cunningham v. SmithKline Beecham,* 255 F.R.D. 474, 478 (N.D. Ind. 2009) (with respect to claims of undue burden, conclusory representations in briefs do not suffice either); *Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, *20, 2006 WL 1585001 (N.D.Ill. 2006) (insufficient merely to invoke "the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence"); *see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd*., 242 F.R.D. 1, 10 (D.D.C. 2007)

7

Case: 1:09-cv-03512 Document #: 196 Filed: 09/25/13 Page 8 of 17 PageID #:1641

("[T]he Court only entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden. The responding party cannot just merely state in a conclusory fashion that the requests are burdensome.") (internal quotations and citations omitted); *see also Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500, 504 (N.D.Ill. 2009) ("This court agrees with Judge Keys' sound reasoning in *Fike* and finds that NCO must produce the requested class-wide documents and information relating to its prior express consent defense. The court understands that it will take NCO time and effort to produce this material, but the likely benefit outweighs the burden and expense."). If there really are zero investigations into asthma/myocarditis deaths, which we know is not the case as there was an investigation in this case, (*see* Exhibit 1, OPR Investigation # 2009-0409), then Plaintiffs ought to be able to pursue discovery of documents from either a broader time frame or a broader category of deaths in order to achieve a statistical analysis as to how these incidents are investigated and remedied, if at all. Thus, for the foregoing reasons, Defendants' objections should be overruled and Plaintiffs' motion granted.

<u>Cermak Health Services (Docket # 193)</u>

<u>Topic 13 to Cermak Health Services & Topic 15 to Sheriff's Office</u>

Descriptions of all countermeasures, reviews, responses, and/or investigations Cermak undertook as a result the death of Ms. McDowell. As to each such undertaking, provide the following information:

8

   a. Identity of each agent or representative of Cermak who participated in the investigation;
   b. Date, location, and description of the investigation;
   c. Identity of all participants in the undertaking and describe their respective roles in the undertaking;
   d. All information Cermak learned in the investigation;
   e. Description of any documents involved in the undertaking or reviewed as part of the investigation; and
   f. All remedies, responses, discipline, or actions taken as a result of the undertaking.

Defendant objects to this topic claiming that information relating to countermeasures, reviews, responses, and investigations are privileged by the Illinois Medical Studies Act. However, as discussed in Plaintiffs' motion, the Illinois Medical Studies Act privilege does not apply in a federal deliberate indifference case occurring at the jail. The cases cited by Cermak, which are state court cases not involving a correctional facility, are not applicable to this case. (*See* Dkt. # 193 at 2 (citing *Niven v. Siqueira*, 109 Ill.2d 357 (1985); *Prichard v. Swedish American Hospital*, 191 Ill.App.3d 388, 399 (2d Dist. 1989)). As Plaintiffs set forth in their motion listing cases where the courts have ordered production of information relating to the mortality investigation, "nearly every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of privilege." *Jenkins v. DeKalb County, Georgia*, 242 F.R.D. 652, 659 (N.D. Ga. 2007). Defendant argues that the state privilege should apply because Plaintiffs have pled pendant state law claims as well; however, Defendant's position has been rejected by

9

the Seventh Circuit. *See Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981).

Defendant further argues that the mortality review report should not be discoverable because it is hearsay. (Dkt. # 193 at 3.) However, the Federal Rules of Civil Procedure plainly set out that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). There is no hearsay exclusion to the discovery rule. Moreover, the report is a document created by a public entity and would be admissible as an exception to the hearsay rule for public records. *See* Federal Rule of Evidence 803(8)(A)(iii).

Defendant relies on the affidavit of Dr. Ting. (*See* Dkt. # 193-1.) However, Dr. Ting's affidavit demonstrates that the mortality review is not privileged. First, Dr. Ting states that he speaks to the security sheriff's officers for information, which may be relevant to the cause of death. (*Id*. at ¶ 5.) Information from custody staff is non-medical and is not privileged. This is the exact reason why the court in *Jenkins* held that mortality reviews in correctional facilities were not privileged. 242 F.R.D. at 660. In *Jenkins*, the court stated:

> There are unique considerations at play in a post-death investigation ordered by a county jail that dramatically weaken the case for recognizing the privilege. A review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context. The generation of post-death reports, including the one at issue in this case, may include details such as when jail officials notified medical officials of a particular problem, and whether there was

> a reason for non-medical officials to have monitored a situation more closely. The report may verify the fact that a jail official failed to notify medical personnel. Not only is this type of information "nonmedical," but it is also may shed light, or at least raise an inference, of jail customs or policies.

*Id.*

Furthermore, Dr. Ting stated: "when completed, the Morbidity Report is shared with the Patient Safety and Quality Improvement Committee members and no one else." (*See* Dkt. # 193-1 at ¶ 6.) While Dr. Ting has not provided any information as to who those members are, Cermak's response stating that "[t]he fact that other people in the administration read the report simply does not support or detract from plaintiff's claim" is contrary to Dr. Ting's assertion that the information is privileged. (Dkt. # 193 at 8.) The report is especially not privileged where one of the people who not only read the report, but also relied on it to refresh his recollection for his deposition, is the Interim Chief Operations Officer. The Interim Chief Operations Office is a non-medical employee and was not even employed by Cermak in 2008 when the investigation was conducted. (Ex. 5, Estrada Dep., 16:12-14, 17:4-5, 17:23-19:2.) Mr. Estrada reviewed the Morbidity and Mortality report prior to his deposition to refresh his recollection regarding the case. He testified that based on his review of the morbidity and mortality report, he was aware that records were missing from McDowell's medical records. (*Id.* at 81:13-82:2.) He also testified that the morbidity and mortality investigation is used by the administrative staff. (*Id.* at 36:8-37:15.)

11

Furthermore, Dr. Ting does not provide any evidence in his affidavit as to when the Patient Safety and Quality Improvement committee review began. *See Webb v. Mount Sinai Hosp. & Med. Ctr. of Chicago, Inc.*, 347 Ill. App. 3d 817, 827-28 (2004) ("timing of the peer review is a crucial fact because the Act does not protect documents generated before the peer-review process begins or after it ends"). In *Webb*, the Illinois Court of Appeals found that the morbidity and mortality report of a death at Cook County's Mt. Sinai hospital was not privileged. *Id.*

Moreover, even if the Court were to find that some areas of Topic 13 were privileged, Defendant's blanket objection to discovery of countermeasures is not sustainable. In *Anderson v. Rush-Copley Med. Ctr., Inc.*, the Illinois Appellate court found that ultimate decisions made and countermeasures implemented, as is requested in parts (d) and (f), must be disclosed. 385 Ill. App. 3d 167, 181-82 (2008). The Court stated:

> [A]ny actual changes, such as modifications to hospital policy or procedure, that were adopted as a direct result of the recommendations and internal conclusions in the Action Plan must be disclosed, as they constitute the "ultimate decisions made or actions taken" as a result of the peer-review process. Even less formal decisions or actions taken here, such as the issuance of staff reminders, the revision of a job description, and the reformatting of a report form, must be disclosed, as the evidence suggests that they were taken as a direct result of the recommendations in the Action Plan.

*Id.* (internal citations omitted).

Defendant argues that the balancing test should weigh in favor of Cermak's assertion of privilege. However, this contention is contrary to the wealth of case law that privileges are not favored. *Memorial Hosp. for McHenry County*, 664 F.2d at 1061

(citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)) ("Because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed."). Defendant argues that production would have a chilling effect of discouraging Cermak from conducting mortality investigations. However, the Illinois Supreme Court has warned against insulating hospitals from disclosure, stating:

> If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records. As a result, it would be substantially more difficult for patients to hold hospitals responsible for their wrongdoing through medical malpractice litigation. So protected, those institutions would have scant incentive for advancing the goal of improved patient care. The purpose of the act would be completely subverted.

*Roach v. Springfield Clinic*, 157 Ill.2d 29, 41-42 (1993). "[T]he statute was never intended to shield hospitals from potential liability." *Id*. In *Roach*, the Illinois Supreme Court rejected arguments similar to those made by Defendant here. In *Roach*, the Court held that information obtained from interviews with medical staff was not "transformed" into information of a peer review committee even if it were reported to the committee later. *Id*. at 41. The Illinois Supreme Court also rejected the defendant's argument, the same argument Defendant makes here, that the plaintiffs have access to the underlying facts. The Court in *Roach* stated,

> According to Memorial, plaintiffs remained fully free to obtain information about the underlying facts. What Memorial's theory fails to acknowledge is that

the statute does not extend any special treatment to "conclusions." Under the express terms of the statute, the privilege, where it exists, extends to "[a]ll information, interviews, reports, statements, memoranda or other data."

*Roach*, 157 Ill. 2d at 42.

Defendant also erroneously claims that Plaintiffs do not explain why their interest in the investigation and countermeasures is necessary. (Dkt. # 193 at 7.) As Plaintiffs stated in their motion, the information sought by Plaintiffs is relevant to Defendants' policies and procedures and whether Defendants' have *de facto* policies of condoning constitutional violations. Information relating to countermeasures, reviews, responses, and/or investigations Cermak and the Cook County jail undertook as a result of the death of Ms. McDowell are relevant to whether Defendants are deliberately indifferent to deaths at the jail and did not make reasonable efforts to prevent future deaths, such as Ms. McDowell's. Furthermore, the investigation may reveal whether Cook County jail or Cermak officials were aware of problems relating to the medical treatment of Ms. McDowell or others with asthma and/or myocarditis. The investigative information would also reveal whether deficiencies were found relating to Ms. McDowell's treatment that was ignored by Defendants, including failing to discipline employees in accordance with their disciplinary policies. Thus, the balance weighs in favor of Plaintiffs' need for the information relating to investigations, countermeasures, and reviews because Plaintiffs' would be prejudiced for the following reasons if they were not able to take the deposition of Defendants on this subject.

Moreover, it is Defendant's burden to demonstrate that the information requested by Plaintiffs is privileged as part of Defendant's internal quality control. *Webb*, 347 Ill. App. 3d 817, 825. As the court held in *Webb*, "The question of whether the Act's privilege applies is a question of law that is reviewed *de novo*; however, the question of whether specific materials are part of an internal quality control is a 'factual question,' on which defendants bear the burden." *Id*.

Finally Defendant argues that Dr. Ting's deposition would not assist Plaintiffs as he does not have an independent recollection of the investigation. However, under Rule 30(b)(6) Defendant has an obligation to prepare Dr. Ting or the 30(b)(6) designee with information known to Cermak Health Services. Fed.R.Civ.P. 30(b)(6). Therefore, a properly prepared 30(b)(6) designee would provide relevant testimony. Thus, Plaintiffs' motion to compel should be granted.

WHEREFORE, for the above stated reasons, Plaintiffs respectfully request that this Court order Defendants to produce a 30(b)(6) designee on these topics, and for such other relief as is just and equitable.

        Respectfully submitted,


        *s/Heidi Karr Sleper*

        _____

        *Electronically filed on September 25, 2013*

Dana L. Kurtz, Esq. (ARDC # 6256245)
Heidi Karr Sleper, Esq. (ARDC # 6287421)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone:    630.323.9444
Facsimile: 312.604.9444
E-mail: dkurtz@kurtzlaw.us
E-mail: hsleper@kurtzlaw.us

**CERTIFICATE OF SERVICE**

The undersigned certifies that I electronically filed the foregoing document to be served upon the following individuals entitled to notice in this case via the CM/ECF system on September 25, 2013.

Maureen.hannon@cookcountyil.gov
Michael.gallagher@cookcountyil.gov

s/*Heidi Karr Sleper*
_____
*Electronically filed on September 25, 2013*